```
                UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF MISSISSIPPI
                       JACKSON DIVISION
```

LYDIA ROBERTA BLACKMON AND                                PLAINTIFFS
TIFFANY BLACKMON

VS.                                  CIVIL ACTION NO. 3:05CV91LN

CARROLL COUNTY SHERIFF'S DEPARTMENT AND
MICHAEL SPELLMAN, INDIVIDUALLY                            DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the court on motion of defendant Michael Spellman for dismissal of plaintiffs' claim against him based on qualified immunity. Plaintiffs Lydia Roberta Blackmon and Tiffany Blackmon have responded in opposition. Having considered the memoranda and submissions of the parties, the court concludes that defendant's motion should be granted.

Plaintiffs Lydia and Tiffany Blackmon filed this action against the Carroll County Sheriff's Department and Deputy Michael Spellman alleging that defendants deprived them of their constitutional rights under 42 U.S.C. § 1983.[1] In addition to their § 1983 claims, plaintiffs have also asserted various state

---

[1] Plaintiffs claim that defendants' conduct violated their Fourth and Fourteenth Amendment right to be free from unreasonable search and seizure, their Sixth and Fourteenth Amendment right to be informed of the nature and the cause of the accusation against them, and their Fifth and Fourteenth Amendment right to due process and equal protection.

law claims.[2] They are seeking compensatory and punitive damages for their alleged injuries.

The facts which gave rise to the instant lawsuit are laid out in detail by both parties in their respective memoranda. In summary, plaintiffs allege that on August 26, 2003, they were working as poll watchers at the fire tower precinct in Carrollton, Mississippi when they were placed under arrest by defendant Spellman. They were taken to the Carroll County Sheriff's Department and released later that day. No charges were pursued against the plaintiffs.

Defendant Spellman has moved to dismiss plaintiffs' claims against him, arguing that he is entitled to qualified immunity for his actions. Specifically, Spellman submits that complaints he received from the poll manager, Monica Liddell, that plaintiffs were creating a disturbance, combined with plaintiff Lydia Blackmon's refusal of his request to "step outside," constituted probable cause, or at minimum, led him to believe that he had probable cause to arrest plaintiffs for disturbing the peace. For their part, plaintiffs admit that during their attempts that day to serve as poll watchers on behalf of Hermon Blackmon, a candidate for supervisor, they encountered numerous problems with

---

[2] Specifically, plaintiffs' complaint sets forth the following claims: negligence, assault, battery, negligent/intentional infliction of emotional distress, negligent hiring of Deputy Michael Spellman, negligent training, supervision, retention and discipline of Deputy Michael Spellman, false arrest/false imprisonment, kidnapping, malicious prosecution, defamation, and invasion of privacy.

Liddell and engaged in several discussions with her, but they insist their conduct did not constitute a disturbance of the peace.

Qualified immunity shields government officials performing discretionary functions from liability. <u>DeLeon v. City of Dallas</u>, 141 Fed. Appx. 258, 261 (5th Cir. 2005). In determining if qualified immunity applies, the court must decide: (1) whether the plaintiffs have alleged a violation of a clearly established constitutional right; and, (2) if so, whether the defendant's conduct was objectively unreasonable in the light of the clearly established law at the time of the incident. <u>Babb v. Dorman</u>, 33 F.3d 472, 477 (5th Cir. 1994).

In support of his motion, Spellman has attached the affidavits of Monica Liddell, the poll manager, and Dewight Blakely, a poll worker. In her affidavit, Blakely explains that Lydia and Tiffany Blackmon identified themselves as poll watchers and were permitted to observe the conduct of the election, but the two began to bother voters and acted in a loud and disruptive manner. She states that Liddell contacted the sheriff's office, and Spellman responded, asked plaintiffs to leave the polling station, approached Lydia Blackmon specifically and indicated that she needed to step outside. When she refused, Blakely maintains that Lydia Blackmon began to scream and "resist aggressively" until Spellman removed her from the polling booth area, while

3

another officer assisted in escorting Tiffany Blackmon from the building.

Liddell paints a similar picture in her affidavit. She recounts that Lydia and Tiffany Blackmon represented themselves to be poll watchers, but she told them they were lacking the proper credentials. Liddell explains that the two returned later that day with the proper credentials and were permitted to observe the election until they "began to crowd, hover and otherwise intimidate, through their presence and comments, voters who were approaching the voter booth." She states that she asked them to keep a reasonable distance from the voters, but they "continued to be disruptive" and "boisterous." Liddell confirms that she contacted the sheriff's office, informed Spellman that the plaintiffs had been "boisterous, disruptive and were otherwise interfering with the process of the election" and asked Spellman to remove the plaintiffs. Like Blakely, Liddell describes a scene where Spellman asked Lydia Blackmon to "step outside," she refused, she continued to act in a "boisterous, agitated, loud, and harassing" manner, Spellman informed her that she would be placed under arrest, and she responded by screaming, resisting and "falling to the ground."

Defendant Spellman has also attached copies of the justice court affidavits he presented in support of the charges of disturbing the peace, in which he represents that Lydia and Tiffany Blackmon "did willfully and unlawfully disturb the peace

4

at Firetower voting precinct by acting in a boisterous manner, using loud speech and refusing to obey the command of Deputy Spellman."

For their part, plaintiffs give a somewhat different version as to what took place on August 26, 2003, submitting their own affidavits recounting the sequence of events.  Lydia Blackmon states that upon her arrival at the polling precinct, Liddell, using a "very hostile tone," informed her that her poll watcher appointment papers needed to be notarized, and that she must leave the precinct immediately, or Liddell would call "the law."  Lydia Blackmon explained that she drove to the courthouse to inquire about Liddell's demand, was told that her papers did not need to be notarized, returned to the polling precinct and encountered Spellman.  At that point, she and Liddell continued to disagree on the need for a notary, and Spellman approached her, reminded her that Liddell was "in charge," advised her not to argue with Liddell and warned her "if you keep on, I'm going to arrest you."  She responded by moving to the corner of the polling precinct, and Spellman walked up to her and told her she was under arrest.  In her words,

> I then held out my wrists to him and said, "Fine, arrest me."  I was trying to be as compliant and cooperative as possible, but to my surprise, Defendant Spellman placed a handcuff on my right wrist, then grabbed my arm and twisted it.  I cried out in response, "Don't pull on my arm like that!"  At this point, Deputy Spellman stopped twisting my arm, and put the hancuff on the other handcuff [sic].  He then indicated that I should follow him outside.

5

Lydia Blackmon denied that Spellman asked her to leave the polling precinct at any time and denied that she said anything to any voters. For the most part, Lydia Blackmon's affidavit focuses on her conversations and disagreements with Liddell, during which she insists that she was "asking questions" but not arguing with Liddell. She consistently described Liddell as "rude" and "hostile."

Tiffany Blackmon's affidavit describes a similar exchange with Liddell regarding the need for notarized papers. She also describes Liddell as "rude," "hostile" and using a "nasty tone." Tiffany Blackmon explains that when she saw Spellman walk Lydia Blackmon out of the precinct in handcuffs, she went back inside the polling precinct. She maintains that Spellman returned inside and at Liddell's "insistence," arrested her as well. She denied that she had acted in a disorderly or disruptive manner or that she was asked and refused to leave the precinct by Spellman, and she maintains that she did not say anything to any voters.

Assuming plaintiffs can establish the requisite constitutional violation, because their § 1983 claims stem from their arrest at the polling precinct, the relevant inquiry is whether Spellman's conduct was objectively reasonable, that is, whether he reasonably believed he had probable cause to arrest plaintiffs. "Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to

6

conclude that the suspect had committed or was committing an offense.'" Haggerty v. Texas Southern University, 391 F.3d 653, 655 (5th Cir. 2004) (quoting Glenn v. City of Tyler, 242 F.3d 307, 313 (5th Cir. 2001)).  Therefore, Spellman is entitled to qualified immunity "if a reasonable officer in his position could have believed that, in light of the totality of the facts and circumstances of which [he] was aware, there was a fair probability that [plaintiffs] had committed or [were] committing an offense."  Id. at 656; see also United States v. Watson, 273 F.3d 599, 602 (5th Cir. 2001) (explaining that probable cause's "fair probability" requires more than a bare suspicion but less than a preponderance of evidence).

    Here, defendant Spellman received complaints from Liddell, the poll manager for the precinct, that plaintiffs were being disruptive and loud.  While plaintiffs maintain they were not being disruptive, they do not dispute that they were having an ongoing disagreement with Liddell, who was attempting to maintain the polling precinct for voters.  Spellman, upon arriving at the precinct, observed Lydia Blackmon "arguing" with Liddell and proceeded to arrest her and Tiffany Blackmon for disturbing the peace in violation of Mississippi Code § 97-35-15.[3]  Based on the

---

[3] Mississippi Code § 97-35-15 provides,
(1) Any person who disturbs the public peace, or the peace of others, by violent, or loud, or insulting, or profane, or indecent, or offensive, or boisterous conduct or language, or by intimidation, or seeking to intimidate any other person or persons, or by conduct either calculated to provoke a breach of the peace, or

7

foregoing, the court concludes that defendant Spellman is entitled to qualified immunity, for even if there was not actual probable cause, there was undeniably arguable probable cause for plaintiffs' arrests, and "[a] police officer who reasonably but mistakenly concludes that he has probable cause to arrest a suspect is entitled to qualified immunity." Tarver v. City of Edna, 410 F.3d 745, 750 (5th Cir. 2005) (citing Hunter v. Bryant, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991)). Under the circumstances, it cannot be said that Spellman's actions were objectively unreasonable.

Plaintiffs' complaint also contains various counts which constitute state law claims, specifically, claims of negligence, assault, battery, negligent/intentional infliction of emotional distress, false arrest/false imprisonment, kidnapping, malicious prosecution, defamation and invasion of privacy. Additionally, plaintiffs' complaint contains claims which are clearly meant to function as claims against the Sheriff's Department, not Spellman, such as negligent hiring, training, supervision, retention and discipline.

---

> by conduct which may lead to a breach of the peace, or by any other act, shall be guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not more than five hundred dollars ($500.00), or by imprisonment in the county jail not more than six (6) months, or both.

8

In his motion, Spellman generally asserts that all of plaintiffs' claims against him are due to be dismissed on the basis that he is entitled to qualified immunity. The court agrees with Spellman that he is entitled to qualified immunity, and while this conclusion supports dismissal of plaintiffs' § 1983 claim, the doctrine of qualified immunity is not applicable to plaintiffs' state law claims. Nevertheless, the court is of the opinion that such claims are barred by the Mississippi Tort Claims Act, Mississippi Code § 11-46-9, which provides in part,

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim: . . .
>     (c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury.

While plaintiffs allege in their complaint that Spellman was "at times, partially acting within the course and scope of his employment . . . and at times, [he] was acting outside the course and scope of his employment," they do not offer any support for their contention that he was "acting outside the course and scope of his employment." The crux of this lawsuit is that Spellman, while on duty as a deputy sheriff with the Carroll County Sheriff's Department, arrested plaintiffs for disturbing the peace based on information he received from Liddell and his personal observation of the plaintiffs. While plaintiffs dispute the veracity of Liddell's account of what took place that day, they do

9

not dispute that Spellman arrested them at her insistence. Particularly given that there is nothing to suggest that Spellmen had any basis for disbelieving Liddell's complaint concerning plaintiffs' conduct, there is no basis for a reasonable conclusion that Spellman acted with reckless disregard of plaintiffs' safety and well being.  Accordingly, the court concludes plaintiffs' state law claims against defendant Spellman are barred by § 11-46-9.

Based on the foregoing, defendant Spellman's motion for summary judgment is granted with respect to all claims advanced by plaintiffs.

SO ORDERED this 3rd day of February, 2006.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE